**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEREK JARVIS,**<br><br>        **Plaintiff,**<br><br>            v.<br><br>**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**<br><br>        **Defendant.** | **No. 1:21-cv-00088-ZMF** |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Derek N. Jarvis brings this action against the United States Department of Housing and Urban Development ("HUD") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is before the court on Defendant's Motion for Summary Judgment. *See* Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 21. For the reasons below, the Court GRANTS Defendant's motion.

**I.    BACKGROUND**

   A.    <u>Jarvis's 2018 FOIA Request</u>

On June 4, 2018, HUD received a FOIA request from Jarvis ("2018 FOIA Request"). *See* Decl. of Deborah Snowden ("Snowden Decl."), Ex. to Def.'s Mot. ¶ 7, ECF No. 21–3. The 2018 FOIA Request sought records maintained by HUD pertaining to Derek Jarvis and his mother, Shirley Pittman. *See id.* Jarvis subsequently clarified the scope of his request as seeking records of any Fair Housing investigations into Grady Management in 2007 and 2009; Burnt Mills Crossing in 2013; or RIMSI Corporation in 2016. *See id.* ¶ 8. He also sought all communications between specific HUD employees and certain organizations and individuals. *See id.* On March 1,

2019, HUD provided an interim response to Jarvis, producing 98 pages of unredacted, responsive documents. *See id*. ¶ 15. Plaintiff subsequently narrowed his request to all information involving a HUD investigation into Grady Management at the Montgomery Paint Branch property—where Mr. Jarvis previously lived—and all investigative files related to Grady Management that arose from complaints filed with HUD by Jarvis and Pittman between 2007 and 2009. *See id.* ¶ 9. Jarvis specifically sought records of an investigation conducted by HUD's District of Columbia field office. *See* Pl.'s Opp'n to Def.'s Mot. To Dismiss ("Pl.'s Opp'n") 2, ECF No. 22.

Following these clarifications, HUD conducted a "due diligence" search of its records. *See* Snowden Decl. ¶ 10. In accordance with HUD procedure, HUD contacted the applicable region and field offices. *See id.* ¶ 11. These offices were Region III and the Philadelphia, Baltimore, and District of Columbia field offices. *See id.* The Region III office then searched "all locations reasonably likely to contain responsive records." *Id.* ¶ 12. The review "showed that no complaint was filed . . . with the District of Columbia [Fair Housing and Equal Opportunity] field office," that HUD "referred the case to the [Maryland Commission on Civil Rights]," and that HUD did not "undertake a separate investigation." Decl. of Rachel Leith ("Leith Decl."), Ex. to Def.'s Mot. ¶¶ 19–21, ECF No. 21–2. As part of its processing of the 2018 FOIA Request, HUD discovered that Jarvis had made similar FOIA requests for this information in 2008 and 2012 which were both "granted in full." Snowden Decl. ¶ 13.

B.     HUD's Response to 2018 FOIA Request

On April 12, 2021, HUD issued its final determination letter which granted Jarvis's 2018 FOIA Request and produced an additional 56 pages of responsive material, including reports generated by HUD's Enforcement Management System and Office of Fair Housing and Equal Opportunity (FHEO). *See* Snowden Decl. ¶ 16. HUD produced these documents after conducting

an automated search of any fair housing discrimination complaints involving Jarvis or his mother in the relevant time frame.  *See* Leith Decl. ¶¶ 20–21.  The records indicated that HUD referred the 2007 complaints against Grady Management to the Maryland Commission for Civil Rights ("MCCR") and closed the 2009 complaint after Jarvis failed to establish HUD's jurisdiction.  *See id.* ¶¶ 21–25.  The MCCR "investigated the complaint and determined that there was no reasonable cause to believe that a discriminatory housing practice had occurred."  *Id.* ¶ 22.

On January 8, 2021, Jarvis sued HUD arguing that HUD "improperly withheld the records sought regarding the Grady Management investigation in 2007."  Pl.'s Opp'n 5.  Specifically, he claims that an investigator in the District of Columbia field office, Mr. Johnson, was "investigating Grady Management's retaliatory letter's [sic] and emails" sent to Jarvis and his mother.  *Id.*  Jarvis claims HUD's motivation for withholding documents related to Mr. Johnson's investigation is because HUD "conspired with Grady Management in the retaliatory act(s) against [Jarvis]."  *Id.* at 7.

## II.   LEGAL STANDARD

The "vast majority" of FOIA cases can be decided on summary judgment.  *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment is granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non–moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is

summary judgment appropriate.  *See Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985).

The court conducts a de novo review of the record when considering a motion for summary judgment in a FOIA case.  *See* 5 U.S.C. § 552(a)(4)(B).  The court may award summary judgment solely based on information provided by the agency in an affidavit or declaration.  *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  An agency's affidavit or declaration must be "relatively detailed and non–conclusory."  *SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations omitted).  The Agency's statement is accorded a presumption of good faith, which cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents."  *Id.* (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam)).

The nonmoving party must provide more than mere unsupported allegations, and a genuine issue for trial must be supported by affidavits, declarations, or other competent evidence.  *See* Fed. R. Civ. P. 56(c).  In the context of summary judgment, *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, a *pro se* plaintiff is not excused from his burden of proof.  *See Willis v. Fed. Bureau of Investigation*, No. 17–cv–1959, 2019 WL 2138036, at *5 (D.D.C. May 16, 2019) (granting summary judgment when *pro se* plaintiff failed to dispute that the FBI conducted a reasonable and adequate search for responsive records).  Indeed, a *pro se* party cannot avoid summary judgment without demonstrating a material dispute of fact.  *See Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) (upholding the grant of summary judgment where *pro se* Plaintiff failed to dispute material facts).

### III.   ANALYSIS

A.   HUD's Response to the 2018 FOIA Request

An agency is entitled to summary judgment in a FOIA case if it has "conducted 'a search reasonably calculated to uncover all relevant documents, and, if challenged, [] demonstrate[s] beyond material doubt that the search was reasonable.'" *Williams v. Fanning*, 63 F. Supp. 3d 88, 93 (D.D.C. 2014) (citing *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  An agency's search is adequate if it was "reasonably calculated to uncover all relevant documents." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *Truitt*, 897 F.2d at 542). The "defending agency must [also] prove that each [responsive] document . . . has been produced" or is exempt from disclosure.  *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

HUD met its burden by searching for and producing the relevant records Jarvis requested. *See generally* Def.'s Mot.  HUD established this via their detailed declarations from Rachel Leith, the Enforcement Branch Chief for Region III in the FHEO, and Deborah R. Snowden, Deputy Chief FOIA Officer in the Office of the Executive Secretariat.  *See generally* Leith Decl.; Snowden Decl.  Specifically, Snowden sufficiently explained HUD's procedures for processing FOIA requests:

> All FOIA requests received by HUD, regardless to whom they are originally addressed, are immediately routed to the FOIA Branch for intake and processing. When a FOIA request is received by HUD, it is entered into the FOIA Management System ("FMS") and assigned a FOIA control number. The request is then analyzed and assigned to a Government Information Specialist to process. Once a request has been assigned a FOIA control number, it can be tracked through FMS at all stages of processing, including after the request has been closed.

Snowden Decl. ¶ 6.

There is no indication that HUD treated the 2018 FOIA Request differently. Upon receipt of the 2018 FOIA Request, HUD "entere[ed] the FOIA request into FMS . . . [and] contact[ed] the region in which the requested information arose." *Id.* ¶ 11. Then, HUD conducted "an electronic search inquiry using Derek Jarvis, Shirley Pittman and Grady Management, Inc. as search terms." Leith Decl. ¶ 17. The search revealed three responsive complaints/inquiries. *See id.* ¶ 18. HUD generated reports for these three hits and produced them to Jarvis. *See* Snowden Decl. ¶ 16. Additionally, HUD "searched for hard copy investigative case files and documents related to [Jarvis's] complaints and inquiry between 2007 and 2009" but did not find any. Leith Decl. ¶ 24.

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc.*, 926 F.2d at 1201 (citing *Meeropol v. Meese*, 790 F.2d 942, 950–51 (D.C. Cir. 1986)). Because HUD "describes how . . . [they] searched . . . all record systems likely to contain responsive records" and produced all such records, their search is adequate. *Pinson v. U.S. Dep't of Just.*, No. 12-cv-1872, 2017 WL 6887041, at *9 (D.D.C. Aug. 31, 2017); *see* Snowden Decl. ¶¶ 16–17. Jarvis has failed to "support [] the allegation that the [HUD's] search procedures were inadequate[.]" *SafeCard Servs.*, 926 F.2d at 1202.

B.   <u>HUD's Retention Policy</u>

Jarvis makes unfounded allegations that HUD failed to produce the investigations of Mr. Johnson or Mr. Bodell and the hard–copy documents associated with Jarvis's complaints because of a conspiracy to retaliate against Jarvis. *See* Pl.'s Opp'n at 7. For example, Jarvis insists that HUD "failed to provide records dating back to 2009 . . . regarding records and documents from the investigation that involved HUD investigator Johnson . . . who had been involved in

6

investigations involving Grady Management in February 2007."  Pl.'s Supplemental Opp'n to Def.'s Mot. To Dismiss ("Pl.'s Supplemental Opp'n") 1, ECF No. 26.

Yet Jarvis has not submitted competent evidence that allows for an inference of conspiracy between HUD and Grady Management or that such missing records even exist.  *See* Pl.'s Opp'n at 7; Pl.'s Supplemental Opp'n at 2.  This is dispositive.  *See Willis*, 2019 WL 2138036, at *1 (granting defendant's summary judgment motion where *pro se* plaintiff failed to support her allegations that defendant was withholding responsive records).  Jarvis' "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."  *SafeCard Servs.*, 926 F.2d at 1201 (citing *Weisberg v. Department of Justice*, 745 F.2d 1476, 1486–87 (D.C. Cir. 1984)).

Moreover, it does not appear that any such conspiracy exists.  First, HUD searched for and produced all responsive documents.  *See* Leith Decl. ¶ 17, ¶ 24.  No record exists of any investigations by Mr. Johnson or Mr. Bodell.  *See* Leith Decl. ¶ 19.  Jarvis counters that he and his mother met with Mr. Johnson and Mr. Bodell.  *See* Decl. of Jarvis, Ex. to Pl.'s Supplemental Opp'n, ¶¶ 3–6, ECF No. 26–1.  However, this does not demonstrate that Mr. Johnson or Mr. Bodell initiated an investigation or retained any documents.

Second, HUD destroyed any other hard-copy files that may have existed in accordance with HUD's retention policy.  *See id.* ¶¶ 24–30.  An agency is permitted to destroy material in accordance with a neutral record retention policy.  *See Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 356 n.24 (D.D.C. 2017).  Indeed, FOIA does not require "agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

The FHEO's retention period for Jarvis's complaint was five years.[1]  *See* Leith Decl. ¶¶ 27–30. Thus, HUD appropriately destroyed the hard–copy documents—to the extent there were any—in 2013.  *See id.*  HUD "committed no error" by "destroying documents [five years] prior to" Jarvis's 2018 FOIA Request.  *See Pinson*, 236 F. Supp. 3d at 356 n.24.

## IV.  CONCLUSION

Because Jarvis's pleadings are "lacking in detail and conclusory," he has failed to carry his burden.  *See SafeCard Servs.*, 926 F.2d at 1200.  Thus, summary judgment is appropriate.  *See id.* (granting summary judgment where the government presented a declaration that was "sufficiently detailed and non-conclusory" in response to plaintiff's unsupported and speculative allegations of bad faith).

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[1] The retention policy for one of his 2007 complaints and his 2009 inquiry was one year. The retention policy for the other 2007 complaint was five years.  *See* Leith Decl. ¶¶ 27–29.